absolving the company from none of the obligations to use that caution which is required in guarding against collisions, is necessary to the discharge of that duty which the company owes to the community, and imposes upon the individual the duty of observing a greater degree of caution than would be necessary if the superior rights of the public did not intervene, requiring the operation of vehicles propelled by mechanical appliances, and running as a part of a system reaching all parts of a great city, and affecting business interests throughout the state.

This rule is put strongly in the negative in the case of Fleckenstein v. Railroad Co., 105 N. Y. 655, 11 N. E. 951, where the court, speaking through Earl, J., say:

"The trial judge did not err in charging the jury that the defendant did not have the exclusive right to the use of its tracks, but simply the paramount right. Street railways have the lawful right to put their tracks in the streets and run their cars thereon. Their cars are confined to the tracks, and cannot turn out to avoid obstacles thereon. Hence they have the right of way, and persons lawfully driving upon the same tracks must not recklessly, carelessly, or willfully obstruct the passage. of their cars. But such persons are not absolutely bound to keep off or get off from the tracks. They must fairly and in a reasonable manner respect the paramount right of a street railway; and if they do this, and without any fault on their part they are injured by carelessness or fault chargeable to the railway, the law affords them a remedy by action for damages."

"But," say the court in the case of McClain v. Railroad Co., 116 N. Y., at page 465, 22 N. E. 1063, "as a street car must continue on the rails of its track, persons otherwise traveling on the street are required to use care to keep out of its way, yet for their protection the duty rests upon the driver to keep his horses reasonably within his control upon the public streets." The same doctrine is asserted by the court in the case of Fenton v. Railroad Co., 126 N. Y. 625, 26 N. E. 967. "Street-railway cars," say the court, speaking through Judge Earl, "have a preference in the streets, and while they must be managed with care, so as not to carelessly injure persons in the street, pedestrians must, nevertheless, use reasonable care to keep out of their way." This case is distinguishable from the case of Huber v. Railroad Co., 22 App. Div. 426, 48 N. Y. Supp. 38, where the plaintiff was crossing the defendant's track in the line of an intersecting street; it being held that, under such circumstances, the defendant's car had no paramount right of way.

This being the law, it was the duty of the trial court to have so stated at the request of the defendant, and, because this request was denied, the judgment and order of the court below is reversed, and a new trial granted, the costs to abide the result of the action. All concur.

(26 App. Div. 584.)

PEOPLE ex rel. LONG ISLAND MUT. FIRE INS. CORP. v. PAYN.

(Supreme Court, Appellate Division, Second Department. March 22, 1898.)

1. MANDAMUS—SUPERINTENDENT OF INSURANCE.

On appeal from a final order directing a peremptory mandamus requiring the superintendent of insurance to amend the report of examiners appointed by him to examine the condition of a mutual fire insurance company by crediting it with certain capital stock notes without charging it with any

corresponding liability, *held*, that no duty was imposed by law upon the superintendent in regard to the subject-matter of the application, and that, therefore, the writ would not lie.

**2. SAME.**

*Held*, further, that, even though the superintendent had waived the objection, the court would be unwilling to give effect to any such concession.

**3. INSURANCE COMPANIES—SUFFICIENCY OF ASSETS.**

A distinction exists between an insurance company having "capital stock" and one having only "assets or capital." The latter is covered by the "Insurance Law" (section 43), applying where the superintendent of insurance deems the assets of a mutual company insufficient to justify its continuance in business, while neither section 41 nor section 118 in its entirety, involving references to capital stock, applies to the case of a mutual insurance company.

**4. SAME—DUTIES OF STATE EXAMINER.**

In making an examination of a mutual fire insurance company under section 43, the examiners are not compelled to do more than state the facts. On these facts the superintendent is to proceed and determine whether the assets of the corporation over and above its liabilities are insufficient to justify its continuance in business. This is the only determination to be made by him.

Appeal from trial term, Kings county.

Application by the people of the state of New York, on the relation of the Long Island Mutual Fire Insurance Corporation, for writ of mandamus against Louis F. Payn as superintendent of insurance.

Appeal from a final order of the supreme court directing that a writ of peremptory mandamus issue commanding the above-named defendant, as superintendent of insurance of the state of New York, to amend the report of the examiners appointed by him to examine into the condition of the above-named relator, by crediting on said report the said relator with assets of $79,400 of capital stock notes without making any corresponding charge as a liability against said company; also amending said report by crediting said company with a sum of about $4,800 for furniture, fixtures, etc., in the office of said company, and used by it in the prosecution of its business. An appeal was also taken by the relator from so much of the final order as refused portions of the relief demanded. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. Rider Cady, for appellant.

Walter H. Jaycox, for respondent.

CULLEN, J. We know of no duty imposed by law upon the superintendent of insurance in regard to the subject-matter of this application, the performance of which is sought to be enforced by the writ of mandamus. Though this objection may have been waived by the appellant in the proceedings before the special term, we understand that he urges it on this appeal; and, even were it now waived, we should be unwilling to give effect to any concession of the parties, and grant the writ of this court against a public officer to compel him to do that which no law makes it incumbent upon him to do. In my opinion, neither the position taken by the appellant nor that maintained by the respondent in regard to the statutory provisions as to the insolvency of mutual fire insurance companies, is correct. I think that section 41 of the insurance law does not apply to the case of a mutual insurance company; neither does sec-

tion 118 in its entirety. Otherwise, as substantially conceded by the learned counsel for the appellant on the argument, the capital stock of every mutual company would be impaired instantly upon its organization, and before it had lost a dollar or spent a dollar. Under his claim the cash paid in and stock notes would constitute the capital stock of the company; but, as such notes and cash are only received in consideration of policies of insurance issued to the makers of the notes, the unearned premiums would have at once to be charged against the capital, and thus the capital be impaired to the extent of those premiums. I think the case of the relator, and of all mutual corporations, is covered by section 43. The difference in the language of these two sections makes this apparent. Section 41 provides for a case where it appears that the capital stock of an insurance company is impaired. Section 43 provides for a case where the assets or capital of a mutual insurance company is insufficient to justify its continuance in business. This makes the distinction between a company having "capital stock" and a company having only "assets or capital" clear. In the case of a mutual insurance company there can be no impairment of the capital stock within the statute. A perfect protection for the public is provided. Whenever the superintendent deems the assets of a company insufficient to justify its continuance in business, the attorney general can proceed against the corporation. The report of the examiners in the main, and with the exception of certain small items, states the condition of the relator correctly. It has $20,214.17 cash assets and $79,247.07 capital stock notes, with a total liability of $44,558.37. To the amount of the cash assets should probably be added an item of $4,879.85 for furniture, stationery, etc., and, it may be, another item of $1,710.99 for amount due from the Fire & Marine Lloyds. But the examiners were not compelled to do more than state the facts, and this they have done except in the instances indicated. On these facts the superintendent is to proceed and determine whether the assets of the corporation, both cash and notes, over and above its liabilities, are insufficient to justify its continuance in business. This is the only determination to be made by the superintendent. There is no such thing as impairment of capital stock in the case. But I by no means wish to be understood as holding that the relator, or any mutual insurance company, should be allowed to continue on in business indefinitely, merely because it has some surplus of assets over liabilities. If that were so, with a net dollar to its credit it might assume obligations to which, if the business proved unfavorable, it would have no means to respond. The question is one for the superintendent to determine when the net assets are too small to justify the company in going on.

The final order appealed from should be reversed, and application dismissed, but without costs. All concur.